**Bruce CARR, Appellant–Defendant,**

v.

**Joseph PEARMAN, Appellee–Plaintiff.**

No. 45A03–0507–CV–323.

Court of Appeals of Indiana.

Sept. 25, 2006.

Bruce Carr, East St. Louis, IL, Appellant pro se.

Kathryn D. Schmidt, Burke Costanza & Cuppy, Merrillville, IN, Attorney for Appellee.

## OPINION

SHARPNACK, Judge.

Bruce Carr appeals the trial court's judgment for Joseph Pearman. Carr raises one issue, which we revise and restate as:[1]

---

1. Carr's "Issue Presented for Review" is "Whether, as a matter of law, Pearman's claim against Carr failed because Pearman had no written fee agreement to represent Carr's client, Gerald Sison, in Gerald's personal injury claim against Daimler Chrysler?" Appellant's Brief at 5. Carr also states that "[t]he issue presented for review came before the trial court on Carr's Ind. Trial Rule 12(b)(6); Rule 50; and Rule 59 motions." *Id.* However, Carr presents no further mention of how his issue for review was presented to the trial court. Specifically, Carr presents no standard of review and fails to cite to the locations in the record where his arguments were presented to the trial court. We remind Carr that Ind. Appellate Rule 46(A)(8)(b) provides: "The argument must include for each issue a concise statement of the applicable standard of review.... In addition, the argument must include a brief statement of the procedural and substantive facts necessary for consideration of the issues presented on appeal, including a statement of how the issues relevant to the appeal were raised and re-

I.  Whether the trial court abused its discretion by denying Carr's motion to dismiss; and

II. Whether the trial court erred by denying Carr's motions for judgment on the evidence.

We affirm.

The relevant facts follow. In February 1996, Pearman's nephew, Gerald Sison, ran off the road in a Chrysler minivan, hit a tree, and was severely injured. Pearman, an attorney, believed that Gerald's injuries were worse than they should have been and talked to Sison's parents, Adonis and Myrna Sison, about investigating the accident. Although Pearman explained to them that such actions were usually taken under a contingency fee agreement, Pearman did not have the Sisons sign a contingency fee agreement.

Pearman told the Sisons to keep a diary of what happened in their family because of Gerald's injury. Pearman also took photographs and videotapes of the van and Gerald's injuries. Pearman bought the van from the Sisons' insurer and put it in a storage facility. Pearman then videotaped the accident site, the tree, the road, and the path of the vehicle and interviewed two witnesses to the accident. Pearman also contacted the National Traffic and Safety Board, the U.S. Department of Transportation, and the Public Citizen Group seeking information on complaints or tests on the seat belts in Chrysler vans. Pearman located a seat belt expert but did not have the funds to hire the expert to inspect the van. Although he called large personal injury law firms looking for another attorney to take the case, none of the law firms were interested in the case. After discussing the case with the Sisons, Pearman and the Sisons decided to dispose of the van to eliminate the storage expenses.

Two years later, the Sisons received recall letters from Chrysler asking that the van be brought in for an inspection of the seat belts. At this point, the Sisons hired Dave Foelber to assist in the case. Gerald signed a contingent fee agreement with Foelber, which also provided: "We also understand that Joseph Pearman has done a good deal of work in preparing this case and we will work with him and you in determining fair compensation for those efforts." Plaintiff's Exhibit 36. Pearman met with Foelber, gave Foelber his file on the accident, and proposed an agreement whereby Pearman would act as co-counsel and receive half of any attorney fees received. Foelber rejected Pearman's proposed agreement and proposed that Pearman receive one-third of the attorney fees. Foelber and Pearman were unable to reach an agreement on fees, and Pearman did not continue as counsel.

Foelber filed a complaint against Daimler Chrysler in state court, but the case was removed to federal court. At that time, Foelber brought Carr into the case. Carr did not have a separate contingency fee agreement with Gerald. Carr met with Pearman to discuss the case and Pearman's attorney fees. Pearman said that he wanted one-third of any attorney fees recovered. Carr and Pearman did not reach an agreement regarding attorney fees for Pearman. After a trial, the federal case ended with a hung jury. The parties then settled the case for $2,000,000.00, out of which Foelber and Carr received $800,000.00 in attorney fees.

Pearman filed a complaint against Foelber and Carr. Pearman alleged that "[t]he work that Pearman performed on behalf of

solved by any ... trial court." Despite Carr's failure to follow the appellate rules, we will attempt to address his arguments.

the Sisons was significant, and the case against the manufacturer of the Dodge Caravan could not have been successfully maintained without it" and that he was "entitled to the value of the work that he performed." Appellant's Appendix at 34. Pearman requested a judgment in the amount of $266,666.67, which was one-third of the attorney fees recovered by Foelber and Carr.

Carr filed a motion to dismiss, alleging that Pearman's complaint failed to state a claim upon which relief could be granted. Specifically, Carr alleged that Pearman's complaint failed because it did not allege that Carr promised to pay Pearman. Pearman responded by alleging, in part, that his complaint stated a valid claim for quantum meruit. The trial court denied Carr's motion to dismiss because it found "that the plaintiff's complaint is adequate to state a claim for the reasonable value of services rendered under a theory of quantum meruit" and that "such claim may be maintained against the defendants herein." Appellant's Appendix at 9–10 (citing *Galanis v. Lyons and Truitt*, 715 N.E.2d 858, 863 (Ind.1999)).

At the jury trial, Carr moved for judgment on the evidence after Pearman's case in chief. In the motion, Carr argued that Pearman's claim violated Rule 1.5(c) of the Ind. Rules of Professional Conduct by his failure to have a written contingency fee agreement, that the work done by Pearman was not proportionate to the work done by Carr and Foelber, and that Pearman's other conduct violated the Rules of Professional Conduct. The trial court denied Carr's motion for judgment on the evidence.

The jury returned a verdict against Carr and Foelber for Pearman in the amount of $100,000.00.[2] Carr renewed his motion for judgment on the evidence at the close of the evidence, but the trial court denied the motion. Carr then filed a motion to correct error and a motion for judgment on the evidence, which the trial court also denied.

## I.

■ The first issue is whether the trial court abused its discretion by denying Carr's motion to dismiss. The standard of review of a trial court's grant or denial of a motion to dismiss for failure to state a claim is de novo. *Sims v. Beamer*, 757 N.E.2d 1021, 1024 (Ind.Ct.App.2001). We do not defer to the trial court's decision because deciding a motion to dismiss based upon failure to state a claim involves a pure question of law. *Id.*

■ "A motion to dismiss under Rule 12(B)(6) tests the legal sufficiency of a complaint: that is, whether the allegations in the complaint establish any set of circumstances under which a plaintiff would be entitled to relief." *Trail v. Boys & Girls Clubs of Northwest Indiana*, 845 N.E.2d 130, 134 (Ind.2006). "Thus, while we do not test the sufficiency of the facts alleged with regards to their adequacy to provide recovery, we do test their sufficiency with regards to whether or not they have stated some factual scenario in which a legally actionable injury has occurred." Id. "A court should 'accept[ ] as true the facts alleged in the complaint,' and should not only 'consider the pleadings in the light most favorable to the plaintiff,' but also 'draw every reasonable inference in favor of [the non-moving] party.'" *Id.* (internal citations omitted).

Carr filed a motion to dismiss, alleging that Pearman's complaint failed to state a claim upon which relief could be granted. Specifically, Carr alleged that Pearman's

---

2. Foelber does not appeal the judgment.

complaint failed because it did not allege that Carr promised to pay Pearman. Pearman responded by alleging, in part, that his complaint stated a valid claim for quantum meruit. The trial court denied Carr's motion to dismiss because it found that Pearman's complaint stated a claim for quantum meruit.[3]

On appeal, Carr argues that Pearman's claim was based upon "an implied contract for a contingency fee in a personal injury case" and that an agreement for a contingency fee can never be implied. Appellant's Brief at 10. Carr also contends that the implied contingency fee agreement was with Gerald's parents and that Carr, as a third party, is not bound by such an implied agreement.

■ Although the trial court denied Carr's motion to dismiss based upon *Galanis v. Lyons & Truitt*, 715 N.E.2d 858 (Ind.1999), we affirm on a different basis. *Havert v. Caldwell*, 452 N.E.2d 154, 157 (Ind.1983) ("[O]n appellate review the trial court's judgment will be affirmed if sustainable on any theory or basis found in the record."). Those not a party to a contract may enforce the contract if they show that they are third party beneficiaries. *R.R. Donnelley & Sons Co. v. North Texas Steel Co., Inc.*, 752 N.E.2d 112, 122 (Ind.Ct.App.2001), *reh'g denied, trans. denied*. A third party beneficiary contract exists when: (1) the parties intend to benefit a third party; (2) the contract imposes a duty on one of the parties in favor of the third party; and (3) the performance of the terms of the contract render a direct benefit to the third party intended by the parties to the contract. Id. The intent of the parties to benefit the third party is the controlling factor and this may be shown by naming the third party or by other evidence. *Id.* Further, "[w]here there is an agreement that compensation is to be paid but the price is not fixed, the party furnishing services and materials in performance of the contract is entitled to the reasonable value thereof." *Ind. Bell Tel. Co. v. Ice Serv., Inc.*, 142 Ind.App. 23, 29, 231 N.E.2d 820, 824 (1967).

■ Pearman's complaint indicates that he was acting as the Sisons' attorney and did a significant amount of work for them. When Gerald signed a contingent fee agreement with Foelber, Foelber included the following in the agreement: "We also understand that Joseph Pearman has done a good deal of work in preparing this case and we will work with him and you in determining fair compensation for those efforts." Appellant's Appendix at 37. Pearman's complaint alleged that his work on behalf of the Sisons was significant, that the case against Daimler Chrysler could not have been successfully maintained without it, and that he was entitled to the value of the work that he performed.

Although Pearman did not have a written or oral contingency fee agreement with the Sisons, the Sisons' agreement with Foelber indicates a clear intent to benefit Pearman as a third-party beneficiary. Cf. *Galanis*, 715 N.E.2d at 861 (holding that "[a]n attorney who is employed under a contingent fee contract and discharged prior to the occurrence of the contingency is limited to quantum meruit recovery for the reasonable value of the services rendered to the client, and may not recover the full amount of the agreed contingent fee"); *Major v. OEC–Diasonics, Inc.*, 743 N.E.2d

---

3. "Quantum meruit is an equitable doctrine that prevents unjust enrichment by permitting one to recover the 'value of work performed or material furnished if used' by another and if valuable." *Galanis v. Lyons & Truitt,* 715 N.E.2d 858, 861 (Ind.1999) (quoting 17A C.J.S. Contracts § 440 at 553 (1963)).

276, 278 (Ind.Ct.App.2001) (holding that an attorney was entitled to a quantum meruit recovery even though his oral contingency fee agreement with the client violated the Ind. Rules of Professional Conduct, which require a contingency fee agreement to be in writing), *trans. denied.* Consequently, we conclude that Pearman stated a set of circumstances under which he could be entitled to relief, and the trial court properly denied Carr's motion to dismiss.

## II.

■■■■ The next issue is whether the trial court erred by denying Carr's motions for judgment on the evidence. The standard of review for a challenge to a ruling on a motion for judgment on the evidence is the same as the standard governing the trial court in making its decision. *Kirchoff v. Selby,* 703 N.E.2d 644, 648 (Ind.1998). Judgment on the evidence is proper only "where all or some of the issues ... are not supported by sufficient evidence." *Id.* (citing Ind. Trial Rule 50). The court looks only to the evidence and the reasonable inferences drawn most favorable to the nonmoving party, and the motion should be granted only where there is no substantial evidence supporting an essential issue in the case. *Id.*

At the jury trial, Carr moved for judgment on the evidence after Pearman's case in chief. In the motion, Carr argued that Pearman's claim violated Rule 1.5(c) of the

Ind. Rules of Professional Conduct by his failure to have a written contingency fee agreement, that the work done by Pearman was not proportionate to the work done by Carr and Foelber, and that Pearman's other conduct violated the Rules of Professional Conduct. The trial court denied Carr's motion for judgment on the evidence.

■■■■ On appeal, Carr argues that Pearman's claim should have failed because Pearman failed to present evidence regarding the reasonable value of his work.[4] Carr contends that Pearman's claim should have failed because Pearman refused to provide an "objective basis to determine a fee for his services other than a percentage of the recovery." Appellant's Brief at 11–12. According to Carr, Pearman should have cited traditional factors, such as his experience, his ability, his reputation, the nature of his employment, his responsibility, his results, his hourly rate, and his hours worked.

■■■■ As noted above, "[w]here there is an agreement that compensation is to be paid but the price is not fixed, the party furnishing services and materials in performance of the contract is entitled to the reasonable value thereof." *Ind. Bell,* 142 Ind.App. at 29, 231 N.E.2d at 824. Further, in *Galanis,* the Indiana Supreme Court recognized that "[i]n determining the reasonable value of the legal services

---

4. Carr also argues that "Pearman's implied contract claim against Carr for attorney fees failed as a matter of law because Gerald was a minor in 1996 when Pearman performed his services" because contracts entered into with minors are voidable. Appellant's Brief at 14. Pearman argues that this issue is waived because Carr did not raise this issue before the trial court. In his reply brief, Carr contends that he raised this issue on pages 199, 552, 643, 649, 663, 673, 730–731 of the Transcript and in the motion to correct error and for judgment on the evidence. Our re-

view of these portions of the record fails to reveal an argument to the trial court that Pearman's claim failed because Gerald was a minor at the time of Pearman's services. Consequently, we conclude that Carr has waived review of this argument. *See, e.g., Mid–States General & Mechanical Contracting Corp. v. Town of Goodland,* 811 N.E.2d 425, 438 (Ind.Ct.App.2004) ("An appellant who presents an issue for the first time on appeal waives the issue for purposes of appellate review.").

rendered, the time expended by the attorney alone is not a controlling factor. Among other things, consideration may be given to the general quality of the effort expended by the attorney." *Galanis,* 715 N.E.2d at 862. Although the adherence to time charges is not required, a trial court would be within its discretion to do so in arriving at a reasonable fee. *Id.* at 863.

In the absence of an agreement regarding the amount of fees that Pearman would recover, Pearman was entitled to receive the reasonable value of his services. Pursuant to *Ind. Bell* and *Galanis,* Pearman's time expended on Gerald's case is not the only consideration in determining the value of his services. In ruling on Carr's motions for judgment on the evidence, the trial court could grant the motions only if no substantial evidence on this issue existed. Pearman testified regarding his work on Gerald's case, which included taking videos and photographs of Gerald's injuries, the van, and the accident site, interviewing witnesses, and contacting governmental agencies, experts, and prospective personal injury law firms. Pearman's expert testified that without Pearman's work "there would not have been a case." Appellant's Appendix at 75. Pearman presented evidence relevant to the value of his services, and it was for the jury to determine the value of his services. The trial court properly denied Carr's motions for judgment on the evidence on this basis.

### B. *Public Policy.*

Carr also argues that Pearman violated Indiana's public policy and various Rules of Professional Conduct by: (1) demanding a contingency fee without a written fee agreement; (2) demanding $266,666.67 in attorney fees without any traditional reasonable basis for the fee; (3) demanding an attorney fee disproportionate to his work and responsibility; (4) demanding an attorney fee from a case in which he was a necessary witness; (5) demanding an attorney fee for a case he did nothing on for over five years; (6) demanding an attorney fee for a case he was not competent to handle; (7) demanding an attorney fee for a case he solicited in a hospital; and (8) demanding that Carr pay him one-third or one-half of Carr's attorney fees. According to Carr, "no court should make it financially profitable for attorneys to offend the Professional Rules of Conduct." Appellant's Brief at 17.

■ As noted in Part I, Pearman was entitled to the reasonable value of his services based upon his status as a third-party beneficiary of the agreement between the Sisons and Foelber, not based upon a contingency fee agreement between himself and the Sisons. Moreover, Carr cites no relevant authority for the proposition that such alleged violations of the Rules of Professional Conduct mandate that Pearman receive no compensation. Even in *Major,* we held that, although an oral contingency fee agreement was invalid, the attorney could recover under quantum meruit. *Major,* 743 N.E.2d at 282. We conclude that the trial court did not err by denying Carr's motion for judgment on the evidence on this basis.

For the foregoing reasons, we affirm the judgment in favor of Pearman.

Affirmed.

NAJAM, J. and ROBB, J., concur.